UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | |
|---|---|
| ASSOCIATION OF AMERICAN MEDICAL COLLEGES, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:14-cv-72 ) |
| JOHN DOE, | ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion to File Matter Under Seal [DE 2] filed by the plaintiff, Association of American Medical Colleges, on November 5, 2014 and the Emergency Motion for Expedited Third-Party Discovery [DE 6] filed by AAMC on November 5, 2014. For the following reasons, the Motion to File Matter Under Seal [DE 2] is **DENIED**, and the Emergency Motion for Expedited Third-Party Discovery [DE 6] is **GRANTED**.

*Background*

The Association of American Medical Colleges is a not-for-profit association that represents accredited medical schools in the United States and Canada, major teaching hospitals and health systems, and academic and scientific societies. Additionally, AAMC sponsors, develops, and administers the Medical College Admission Test. The MCAT is a standardized computer-based examination used as part of the medical school admissions process. AAMC owns all copyrights for the MCAT, the secure contents of the MCAT are trade secrets, and AAMC protects the security and confidentiality thereof.

Applicants to medical schools and other health sciences graduate degree programs use their MCAT scores to gain admission into North American schools. A higher MCAT score helps

applicants gain admission into more competitive schools. AAMC administers the MCAT multiple times each year throughout the United States, Canada, and selected locations across the globe. AAMC recently administered the MCAT at 4050 Britt Farm Drive, Lafayette, Indiana 47905 on October 21, 2014, October 25, 2014, and November 7, 2014. Applicants are scheduled to receive their scores for the October examinations on November 25, 2014 and December 9, 2014 for the November examination. Furthermore, AAMC may schedule additional MCAT administrations at the same test center in the near future.

AAMC operates and administers the online electronic registration system that applicants use to register for the MCAT. As part of the registration, applicants must consent to certain terms and conditions. Applicants must acknowledge that they read, accepted, and agreed to terms in AAMC's *Examinee Agreement*, which prohibits applicants from engaging in any activity that may compromise the validity, integrity, or security of the MCAT. Additionally, applicants must agree to the MCAT Terms of Use, which prohibits applicants from pretending to be someone else or spoofing a party's identity.

Craigslist, Inc. operates an online service that allows users to submit and browse classified advertisements. Craigslist provides anonymous email forwarding that allows users to post advertisements while remaining anonymous to responding users. Craigslist's Terms of Use govern the website and incorporate all other site rules. The site rules prohibit any goods, services, or content that violates the law or legal rights of others. The primary web address for Craigslist is craigslist.org, but Craigslist also maintains other web addresses that include the name of the geographic region where postings are organized, such as tippecanoe.craigslist.org.

On or about September 25, 2014, the defendant posted an anonymous advertisement on tippecanoe.craigslist.org, the geographic region for Lafayette and West Lafayette, Indiana. The ad read as follows:

> Need Someone (Possibly Asian) To Take the MCAT for me (West Lafayette)
>
> Like the title says I am looking for someone preferably someone who has already taken the MCAT who needs a large sum of money if they can get me a high score. A fake ID will be made for this occasion and price will can [sic] be negotiated but I am looking to pay upwards of $1,500 for an amazing score.

Complaint at ¶ 29.

Another Craigslist user viewed the posting and alerted AAMC. On October 15, 2014, an AAMC representative captured an image of the posting, and later that day the post was removed from Craigslist's website. On October 17, 2014, AAMC contacted Craigslist to obtain information about the defendant's identity. However, Craiglist's counsel advised AAMC that it does not disclose personal information about users without a subpoena or other legal process. AAMC then reported the matter to federal law enforcement authorities, who may be considering a criminal investigation. Thus far AAMC has not identified the defendant.

AAMC believes that the defendant registered for a recent MCAT administration or intends to register for an upcoming administration. Furthermore, AAMC believes the defendant took or intends to take the MCAT via proxy to submit a fraudulent score for admission into a medical school or health sciences graduate degree program.

*Discussion*

AAMC requests the court to order the Clerk to file the instant matter under seal until the defendant's identity is ascertained. **Federal Rule of Civil Procedure 26(c)** provides that good cause must support the sealing of a portion of a pre-trial record. There is a general presumption in favor of public access to judicial records. ***Hicklin Eng'g, L.C. v. Bartell***, 439 F.3d 346, 348

3

(7th Cir. 2006).  However, a party may overcome that presumption by a showing of good cause to seal the record.  *Citizens First Nat. Bank of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999).  "When there is a compelling interest in secrecy, as in the case of trade secrets, the identity of informers, and the privacy of children, portions and in extreme cases the entirety of a trial record can be sealed." *Jessup v. Luther*, 277 F.3d 926, 928 (7th Cir. 2002) (citing *Citizens First Nat. Bank*, 178 F.3d at 945).  Courts weigh the interest in secrecy against the competing interests on a case by case basis. *Jessup*, 277 F.3d at 928.

AAMC argues that granting public access to this cause's records may undermine an ongoing criminal investigation.  In support of that argument, AAMC relies on *United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013).  AAMC admits that it does not appear that a federal court within the Seventh Circuit has confronted this issue in a civil context but asks the court to follow the reasoning in *Smith*.

In *Smith*, the government requested a protective order to prevent the disclosure of discovery materials to the public.  985 F. Supp. 2d at 530.  The government argued that public access to the discovery materials would alert possible subjects of the government's investigation and would compromise the government's ability to ferret out wrongdoing.  *Smith*, 985 F. Supp. 2d at 531.  The court indicated that the government had "the burden of demonstrating, and not just alleging" that public disclosure could jeopardize an ongoing investigation.  *Smith*, 985 F. Supp. 2d at 531.  The court reviewed an *ex parte* letter *in camera* and found that the government met its burden.  *Smith*, 985 F. Supp. 2d at 531.  The court found that the letter adequately established both an ongoing investigation into the criminal conduct related to the discovery materials and that public disclosure could undermine the investigation.  *Smith*, 985 F. Supp. 2d at 531.

As stated above, AAMC has not presented authority for this issue in a civil context or from the Seventh Circuit. However, the court finds that even if the court was bound by *Smith*, AAMC has not met its burden to demonstrate that public disclosure would undermine an ongoing government investigation. AAMC has indicated that it reported the defendant's conduct to federal law enforcement authorities, but it has not presented evidence that an investigation is ongoing. AAMC argues that the defendant, or other parties, may be able to frustrate a potential criminal investigation if this court does not seal the case until the defendant's identity is ascertained. Even if that is the case, AAMC first must demonstrate that a criminal investigation is ongoing, which it has not done. *See Smith*, 985 F. Supp. 2d at 531 ("[T]he Government has the burden of demonstrating, and not just alleging, that public disclosure…could jeopardize ongoing investigations."). Therefore, the court does not find good cause to seal this cause's record based on the potential to undermine a criminal investigation.

Second, AAMC argues that the general rule of grand jury secrecy in criminal cases and the justifications to seal grand jury proceedings apply in this case. AAMC cites the Supreme Court's reasoning behind grand jury secrecy to support its argument. *See United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, n.6, 78 S. Ct. 983, 986, n.6, 2 L. Ed. 2d 1077 (1958) (stating reasons for grand jury secrecy including to prevent the escape of those who may be indicted and to encourage free and untrammeled disclosures by parties with information about the alleged crimes). AAMC applies the reasons for grand jury secrecy to this case to argue that the defendant may be able to destroy evidence or otherwise frustrate any potential criminal investigation. However, this court does not find this case to be analogous to a grand jury proceeding that requires secrecy, particularly without any evidence that a criminal investigation is underway.

AAMC alleges that a criminal investigation may be underway because it notified federal law enforcement authorities about the defendant's conduct. It then asks this court to seal this case until the defendant can be ascertained based on that allegation. Without evidence that the government has initiated a criminal investigation, this court cannot find good cause to seal the present matter and overcome the presumption in favor of public access.

AAMC also requests the court to allow it to conduct expedited third-party discovery. Federal Rule of Civil Procedure 26(d)(1) provides that "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order." This matter is not exempt from initial disclosure under Rule 26(a)(1)(B). *See* Federal Rule of Civil Procedure 26(a)(1)(B) (listing the proceedings exempt from initial disclosure).

"A party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual discovery procedures." ***Alternative Energy Solutions, Ltd. V. Chico***, 2011 WL 3880439, *1 (N.D. Ind. Sept. 2, 2011) (quoting ***Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks Inc.***, 213 F.R.D. 418, 419 (D. Colo. 2003)); *see* 8 C. Wright, A. Miller & R. Marcus, *Federal Practice and Procedure* § 2046.1, p. 592 (2d ed. 1994) ("Although the rules do not say so, it is implicit that some showing of good cause should be made to justify such an order."). Courts have developed two approaches to assess expedited discovery requests. ***In re Fannie Mae Derivative Litigation***, 227 F.R.D. 142, 142–43 (D.D.C. 2005).

The ***Notaro*** approach requires the party seeking expedited discovery to demonstrate: "(1) irreparable injury, (2) some probability of success on the merits, (3) some connection between

6

the expedited discovery and the avoidance of the irreparable injury, and (4) some evidence that the injury that will result without expedited discovery looms greater than the injury that the defendant will suffer if the expedited relief is granted." *Notaro v. Koch*, 95 F.R.D. 403, 405 (S.D.N.Y. 1982). The second approach directs courts to decide the request based on its reasonableness in light of all the surrounding circumstances. *In re Fannie Mae*, 227 F.R.D. at 142. Courts should consider the following factors under the reasonableness test: "(1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *In re Fannie Mae*, 227 F.R.D. at 143.

Courts within this circuit have declined to apply *Notaro* in favor of the reasonableness approach because the circumstances of the cases before them were distinguishable from those in *Notaro*. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. O'Connor*, 194 F.R.D. 618, 623–24 (N.D. Ill. 2000) (declining to apply *Notaro* because it was inappropriate for the current matter); *Sheridan v. Oak Street Mortg. LLC*, 244 F.R.D. 520, 522 (E.D. Wisc. 2007) (applying the "good cause" standard because the circumstances of the case did not warrant the "more stringent test of *Notaro*"). In *Notaro*, the plaintiffs sought a permanent injunction and expedited discovery *in lieu of* a preliminary injunction hearing. *Notaro*, 95 F.R.D. at 404. In this case, AAMC seeks expedited discovery because it cannot identify the defendant. Therefore, this court finds this case distinguishable from *Notaro* and applies the reasonableness test in this situation.

There is no preliminary injunction pending in this matter. AAMC has requested expedited discovery to identify the defendant's name, email address, mailing or IP address, phone number, or other information that will allow AAMC to identify the defendant. AAMC

requests expedited discovery from third parties because it has not been able to ascertain the defendant without the opportunity to request discovery. The defendant will not be burdened from the request because AAMC seeks expedited discovery from third parties. The expedited discovery request is made in advance of the Rule 26(f) conference, but it is necessary because the parties cannot meet for a Rule 26(f) conference until AAMC identifies the defendant. Therefore, this court finds AAMC has good cause to conduct expedited discovery under the reasonableness test because otherwise it cannot maintain this litigation or identify the defendant. *See* **Bicycle Peddler, LLC v. Does 1-12**, 295 F.R.D. 274, 276–77 (N.D. Ill. 2013) (finding good cause for expedited discovery where the plaintiff only sought identifying information and could not otherwise maintain the litigation or identify the defendants).

Based on the foregoing reasons, the Motion to File Matter Under Seal [DE 2] is **DENIED**, and the Emergency Motion for Expedited Third-Party Discovery [DE 6] is **GRANTED**.

ENTERED this 19th day of November, 2014.

/s/ Andrew P. Rodovich
United States Magistrate Judge